UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SALINAS VALLEY MEMORIAL HEALTHCARE SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>ENVIROTECH MOLDED PRODUCTS, INC., et al.,<br><br>Defendants. | Case No. 17-CV-03887-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

Plaintiff Salinas Valley Memorial Healthcare System ("Plaintiff") sues Envirotech Molded Products, Inc. ("Envirotech") and Envirotech Molded Products Inc. Employee Benefit Plan (the "Plan") (collectively, "Defendants") for causes of action arising from Defendants' alleged failure to properly pay Plaintiff for medical care that Plaintiff provided to a beneficiary of a health plan administered by Defendants. *See* ECF No. 1 ("Compl.") ¶ 1. Before the Court is Defendants' motion to dismiss. ECF No. 15 ("Def. Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Defendant's motion to dismiss.

## I. BACKGROUND

1

### A. Factual Background

Plaintiff is a "public hospital district and health system" located in Monterey County, California. Compl. ¶ 6. Defendant Envirotech is a Utah corporation with its primary place of business in Salt Lake City, Utah. *Id.* ¶ 7. Plaintiff alleges that Defendant Envirotech "is the designated Plan Administrator," "Named Fiduciary," and sponsor of Defendant Plan, which is a self-insured ERISA health benefits plan. *Id.* ¶¶ 7–8. Plaintiff also asserts that Defendant Plan "has no in-network hospitals." *Id.* ¶ 33. Thus, Plaintiff alleges that "as far as emergency services and hospital care is concerned, Defendants intentionally set up a Plan structure where there is no network at all." *Id.*

In 2016, Plaintiff admitted a very ill woman ("Patient")[1] on two separate occasions for "intensive inpatient care."[2] *Id.* ¶ 1. At that time, the Patient was a beneficiary of Defendant Plan. *Id.* ¶ 8. In mid-January 2016, "when the Patient was still at [Plaintiff's] Hospital," Plaintiff called Defendants to verify the Patient's benefits under the Plan. *Id.* ¶ 37. Plaintiff alleges that "an individual speaking on behalf of the Plan" named "Jennifer" confirmed that (1) the Plan "had a $1,000 deductible for calendar year 2016"; (2) the Plan covered, among other benefits, "semiprivate inpatient care (e.g., a hospital room)" for the Patient effective January 1, 2016; (3) "such care would initially be covered at 70% up to $10,000, and then would be paid at 100% thereafter"; and (4) "the Plan had a Maximum Out-of-Pocket limit of $3,000 in calendar year 2016, which had not yet been met." *Id.* Then, in mid-March 2016, Plaintiff called Defendants again to verify the Patient's benefits under the Plan. This time, Plaintiff spoke with someone named "Heidi," who confirmed that the Plan had a $1,000 deductible for 2016, verified that Patient's coverage was effective January 1, 2016, and "represented that the Plan would actually pay 80% for inpatient care up to $20,000, and after that point, would pay 100% for such care." *Id.*

---

[1] Plaintiff's complaint notes that the Patient's name is not included in any public filings in order to protect Patient's privacy, and also states that Plaintiff "has engaged in communications with all of the Defendants about the Patient, and is informed and believes they all know from the allegations contained in this Complaint the identity of the Patient." Compl. ¶ 1 n.1. Defendants do not refute Plaintiff's statement or otherwise indicate that Defendants do not know the identity of the Patient.
[2] Plaintiff's complaint states that "[a]ll of the services that [Plaintiff] rendered to the Patient" were "hospitalization and emergency services." Compl. ¶ 15.

2
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

¶ 38. Plaintiff alleges that the "customary meaning" of Defendants' representations about paying for certain percentages, such as 70%, 80%, and 100%, is that Defendants would pay those percentages of the Plaintiff's charges for the services that Plaintiff provided to the Patient. *Id.* ¶ 40. Plaintiff also alleges that Heidi disclosed only one limitation on "inpatient care benefits": "that the Plan would pay for up to 60 days of inpatient care in any given calendar year." *Id.*

Relying on these representations, Plaintiff provided intensive inpatient care to the Patient. Plaintiff's bill for Defendants' portion of the charges for the Patient's care totaled $200,444.85. *Id.* ¶ 1. However, Defendants paid only $63,581.36, or less than a third of the bill. *Id.* Plaintiff states that Defendants arrived at this figure by relying on "the unsupported assumption that they never have to pay more than [120% of] the rate that the federal government pays under the Medicare program." *Id.* ¶ 23. Thus, instead of paying percentages of Plaintiff's charges for the services that Plaintiff provided, Defendants paid only percentages of 120% of the Medicare rates for those services. *See id.* ¶ 28. For example, instead of paying 100% of Plaintiff's charges for services rendered after the Maximum Out-of-Pocket ("MOOP") threshold was met, Defendants paid 100% of 120% of the Medicare rates for those services. *Id.* Plaintiff alleges that 120% of Medicare rates is "just a fraction of the standard charges by [Plaintiff] and all other hospitals in this geographic area (as well as many others)." *Id.* ¶ 23. Further, because Plaintiff's charges for the services it provided to the Patient were "well above 120% of Medicare," Defendants' refusal to pay any more than 100 % of 120% of Medicare rates for those services left "the Patient on the hook for the vast bulk of hospital bills." *Id.* ¶ 28.

Plaintiff alleges that the Summary Plan Description ("SPD") for Defendant Plan did not disclose the fact that Defendants would pay only 120% of the Medicare rates (at most) for covered services in "sufficiently close proximity" to the Plan's description or summary of benefits. *Id.* ¶ 31. Plaintiff also alleges that at no time during Plaintiff's two authorization and verification phone calls with Defendants' representatives did those representatives "identify any limitations or exclusions" or disclose that Defendants "would not pay more than 120% of Medicare." *Id.* ¶ 41. Plaintiff "pursued all available levels of internal appeal[s] under the Plan with respect to the

3
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

1  Patient's medical care," but "the Plan has refused to pay a cent more" than the $63,581.36 it

2  already paid. *Id.* ¶¶ 2, 52.

### B. Procedural History

On July 10, 2017, Plaintiff sued Defendants in this Court. *See* Compl. Plaintiff's complaint alleged four causes of action against Defendants: (1) violation of the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1132(a)(1)(B); (2) violation of 42 U.S.C. § 300gg-6(b); (3) intentional misrepresentation; and (4) negligent misrepresentation.

On August 2, 2017, Defendants filed a motion to dismiss all but Plaintiff's first cause of action. *See* ECF No. 15 ("Def. Mot."). On August 28, 2017, Plaintiff opposed Defendants' motion to dismiss. *See* ECF No. 18 ("Pl. Opp."). On September 8, 2017, Defendants filed a Reply. ECF No. 20.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially

4
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendants move to dismiss the second, third, and fourth causes of action asserted against Defendants in Plaintiff's complaint. The Court first addresses Plaintiff's second cause of action for violation of 42 U.S.C. § 300gg-6(b). Subsequently, the Court addresses Plaintiff's third and fourth causes of action for intentional and negligent misrepresentation.

### A. Violation of 42 U.S.C. § 300gg-6(b)

42 U.S.C. § 300gg-6(b) states that "[a] group health plan shall ensure that any annual cost-sharing imposed under the plan does not exceed the limitations provided for under" 42 U.S.C. § 18022(c)(1). In turn, § 18022(c)(1) states in relevant part that for any given plan year, "[t]he cost-sharing incurred under a health plan . . . shall not exceed" a dollar amount calculated under 26 U.S.C. § 223(c)(2)(A)(ii) and adjusted under 42 U.S.C. § 18022(c)(4). Thus, in conjunction with 42 U.S.C. § 18022(c)(1), § 300gg-6(b) limits the total amount of cost-sharing a group health plan can impose on a policy holder in a plan year.

Plaintiff asserts that by paying only a fraction of Plaintiff's charges for hospital inpatient services rendered to the Patient, Defendants left "the Patient on the hook for the vast bulk of [the $200,444.85 in hospital bills" in violation of the cost-sharing limitation imposed on Defendants by 42 U.S.C. § 300gg-6(b). *See* Compl. ¶ 61. Plaintiff notes that it brings this cause of action "pursuant to an assignment of benefits it has obtained [from] the Patient." *Id.* ¶ 60. Defendants move to dismiss this claim on two grounds. First, Defendants argue that the cost-sharing limitations set forth in 42 U.S.C. §§ 300gg-6(b) & 18022(c)(1) do not apply to self-insured group health plans like Defendant Plan. Def. Mot. at 3–5. Second, Defendants argue that even if the cost-sharing limitations under 42 U.S.C. §§ 300gg-6(b) & 18022(c)(1) apply to self-insured group health plans, under § 18022(c)(3)(B) those "cost-sharing limitations . . . do not apply to services provided by out of network hospitals" like Plaintiff. Def. Mot. at 5–6. As discussed further below, the Court agrees with Defendants' second argument, and thus the Court need not consider Defendants' first argument.

42 U.S.C. § 18022(c)(3) defines the term "cost-sharing" for purposes of the cost-sharing limitation imposed by § 18022(c)(1). Section 18022(c)(3)(A) states that "cost-sharing" includes "deductibles, coinsurance, copayments, or similar charges," as well as "any other expenditure required of an insured individual which is a qualified medical expense . . . with respect to essential health benefits covered under" a health plan. However, § 18022(c)(3)(B) specifies that "cost-sharing" does not include "balance billing amounts from non-network providers." Based on § 18022(c)(3)(B)'s specific exclusion of "balance billing amounts from non-network providers"

6
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

from the definition of "cost-sharing," Defendants argue that Defendants' decision to pay only a fraction of Plaintiff's charges does not run afoul of the cost-sharing limitation in § 18022(c)(1) because Plaintiff was a "non-network provider," and thus any portion of Plaintiff's service charges that exceeds what Defendants paid for those services does not count as "cost-sharing." *See* Def. Mot. at 6.

In its opposition to Defendants' motion to dismiss, Plaintiff does not challenge the logic underlying Defendants' argument. Instead, Plaintiff's only counterargument is that Plaintiff was not a "non-network provider" within the meaning of § 18022(c)(3)(B) "because [Defendant Plan] did not, in fact, have *any* hospitals that were in network." Pl. Opp. at 9 (emphasis added). In its complaint, Plaintiff alleges that (1) Defendant Plan "has no in-network hospitals"; and (2) "as far as emergency services and hospital care are concerned, Defendants intentionally set up a Plan structure where there is no network at all." Compl. ¶ 33. Thus, Plaintiff argues that even though Plaintiff was not part of Defendants' provider network, Plaintiff cannot be considered a "non-network provider" under § 18022(c)(3)(B) because "there [was] no such thing [] as an in-network" provider of emergency services and hospital care like Plaintiff "for the Patient to select." Pl. Opp. at 9.

The Court does not find Plaintiff's position to be the most reasonable interpretation of "non-network provider" as used in § 18022(c)(3)(B). Under a plain reading of those words, a hospital is a "non-network provider" in relation to a health plan if (1) the health plan has a network of providers; and (2) the hospital is not one of those providers. Under this straightforward reading, Plaintiff would qualify as a "non-network provider." In contrast, Plaintiff's interpretation of "non-network provider" adds another requirement. In Plaintiff's view, a hospital is a "non-network provider" in relation to a health plan only if (1) the health plan has a network of providers; (2) the hospital is not one of those providers; *and* (3) health plan beneficiaries have an in-network option for obtaining the services that the hospital provides. Thus, under Plaintiff's construction of § 18022(c)(3)(B), because none of Defendants' in-network providers offered the hospital and emergency services that Plaintiff provided to the Patient, Plaintiff cannot be

7
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

considered a "non-network provider"—even though Defendants had a network of providers and Plaintiff was not part of that network.

The only support Plaintiff musters for its more intricate reading of the term "non-network provider" is a citation to 45 C.F.R. § 156.130, "the implementing regulation for" 42 U.S.C. § 18022. Pl. Opp. at 9. However, the Court is not persuaded that 45 C.F.R. § 156.130 supports Plaintiff's construction of the text. Plaintiff points specifically to 45 C.F.R. § 156.130(c), which states as follows:

> (c) Special rule for network plans. In the case of a plan using a network of providers, cost-سharing paid by, or on behalf of, an enrollee for benefits provided outside of such network is not required to count toward the annual limitation on cost sharing (as defined in paragraph(a) of this section).

Plaintiff argues that "[t]he wording of this regulation strongly suggests that, in order for 'network providers' and 'non-network providers' to be meaningful categories, the health plan at issue must use a network of providers." Pl. Opp. at 9.

However, Plaintiff has not alleged that Defendants did not use a network of providers. Instead, Plaintiff has alleged that there were no in-network providers of emergency services and hospital care. *See* Compl. ¶ 33. Further, Plaintiff concedes that self-insured plans, like Defendant Plan, are not required to offer any particular essential health services or set of health services. Pl. Opp. at 5–6. Thus, given that self-insured plans are not required to cover any particular essential health services, it appears inconsistent that self-insured plans would be required to include providers of any particular essential health services in their networks. Thus, the Court is not persuaded by Plaintiff's argument regarding 45 C.F.R. § 156.130(c).

However, the Court acknowledges that self-insured plans, like Defendant Plan, can circumvent 42 U.S.C. § 18022(c)(1)'s cost-sharing limitations by excluding providers of expensive services—such as hospital and emergency services—from their networks. This would be inconsistent with the spirit of the statutory scheme. Nonetheless, in the absence of case law supporting Plaintiff's interpretation, the Court finds that Defendants' interpretation is more consistent with the plain text of the statute. Consequently, the Court concludes that Plaintiff was a

8

Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

"non-network provider" within the meaning of 42 U.S.C. § 18022(c)(3)(B) because Plaintiff was not a member of Defendants' provider network.

Accordingly, Defendants' motion to dismiss Plaintiff's cause of action for violation of 42 U.S.C. § 300gg-6(b) is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a cause of action under § 300gg-6(b). *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### B. Intentional Misrepresentation and Negligent Misrepresentation

Plaintiff's third and fourth causes of action for intentional and negligent misrepresentation are based on the two phone calls that Plaintiff made to Defendants in January and March 2016 in order to verify the Patient's benefits under the Plan and to seek authorization to provide care to the Patient. Specifically, Plaintiff alleges that during those phone calls, Defendants' representatives "affirmatively represented to [Plaintiff] that [Defendants] would cover" (1) certain percentages of the Patient's inpatient hospital charges up until the Patient's MOOP threshold is met; and (2) 100% of those charges after the Patient's MOOP threshold is met. Compl. ¶¶ 37–38, 67, 74. However, Plaintiff alleges that at the time of those phone calls, "Defendants knew that the representations were false . . . and [] that [Defendants] intended never to pay more than" certain percentages "of a much smaller base amount, e.g., 120% of Medicare rates." *Id.* ¶¶ 68, 75. Further, Plaintiff argues that Defendants' failure to disclose their policy of calculating reimbursement percentages based on 120% of Medicare rates—instead of on Plaintiff's "full billed charges"—made Defendants' representations over the phone "materially misleading." *Id.* Because Plaintiff's claims for intentional and negligent misrepresentation are based on alleged misrepresentations that Defendants made *to Plaintiff*, Plaintiff brings these claims on its own behalf and not pursuant to an assignment from the Patient. *Id.* ¶¶ 71, 78.

Defendants move to dismiss Plaintiff's causes of action for intentional and negligent misrepresentation on two grounds. First, Defendants argue that those claims are conflict

9

preempted by the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1144(a). Second, Defendants argue that Plaintiff fails to allege those claims with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. The Court addresses each argument in turn.

### 1. Conflict Preemption Under 29 U.S.C. § 1144(a)

First, Defendants argue that Plaintiff's causes of action for intentional and negligent misrepresentation should be dismissed because they are conflict preempted under 29 U.S.C. § 1144(a). *See* Def. Mot. at 6–7. Section 1144(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." "[T]he words 'relate to,'" however, "cannot be taken too literally." *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849 (9th Cir. 2002). "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.'" *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (2005) (alteration omitted). Such an interpretation would "read the presumption against pre-emption out of the law," *id.*, and is "a result [that] no sensible person could have intended." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (internal quotation marks omitted).

As such, U.S. Supreme Court precedent "to date has described two categories of state laws that [§ 1144(a)] pre-empts." *Id.* "First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation, that 'reference' will result in pre-emption." *Id.* (internal quotation marks, citation, ellipses, and alterations omitted). "Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* (internal quotation marks and ellipses omitted).

Plaintiff's claims for intentional and negligent misrepresentation do not fall under either of

10
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

these categories. First, as to the "reference to" prong, California tort law does not "act exclusively upon ERISA plans." *Id.* Nor is "the existence of ERISA plans . . . essential to [its] operation." *Id.* Instead, California tort law has "general application, and do[es] not focus exclusively (or, for that matter, even primarily) upon ERISA plan administration." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *49 (N.D. Cal. May 27, 2016).

Second, as to the "connection with" prong, the U.S. Supreme Court has advised courts to look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans" if the state law claims are allowed to proceed. *Gobeille*, 136 S. Ct. at 943 (internal quotation marks and citation omitted). The Ninth Circuit has utilized a "relationship test" to analyze the "connection with" prong. *Paulsen*, 559 F.3d at 1082. Under that test, "a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Id.*; *see also Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee."). In the instant case, Plaintiff brings its claims for intentional and negligent misrepresentation on Plaintiff's own behalf as a third-party health care provider. The relationship between a health care provider and an insurance plan is not an "ERISA-regulated relationship." *Paulsen*, 559 F.3d at 1082. Indeed, the Ninth Circuit has stated that "where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), *no ERISA-governed relationship is implicated* and the claim is not preempted." *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) (emphasis added); *see The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (stating that § 1144(a)

11

does not preempt "claims by a third-party who sues an ERISA plan not as an assignee of a purported ERISA beneficiary, but as an *independent* entity claiming *damages*"). Thus, Plaintiff's causes of action for intentional and negligent misrepresentation do not have a forbidden "connection with" any ERISA plan.

Defendants rely on two U.S. Supreme Court cases, *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 48 (1987), and *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 62 (1987), for the proposition that "[s]tate common law fraud and negligent misrepresentation claims are preempted by ERISA." Def. Mot. at 7. However, neither of those cases is on point. First, *Dedeaux* involved a plan member who brought a common law claim against a plan "for failure to pay benefits on [a] group insurance policy." 481 U.S. at 44. Thus, the claim in *Dedeaux* bore on "an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member," and therefore was conflict preempted under 29 U.S.C. § 1144(a) because it had a "connection with" an ERISA plan. *Paulsen*, 559 F.3d at 1082. In contrast, as the Court explained above, Plaintiff's causes of action for intentional and negligent misrepresentation do not implicate any "ERISA-regulated relationship," and therefore do not have a "connection with" any ERISA plan. Second, *Taylor* was not about conflict preemption under 29 U.S.C. § 1144(a). Instead, *Taylor* was about whether certain state common law claims were "displaced by ERISA's civil enforcement provision," which is contained in 29 U.S.C. § 1132(a)(1)(B). 481 U.S. at 60.[3]

As a result, Plaintiff's claims for intentional and negligent misrepresentation are not

---

[3] In the ERISA preemption section of their motion to dismiss, Defendants also raise two arguments that do not appear to be related to ERISA preemption. First, Defendants argue that Plaintiff was "obligated to elect whether [Plaintiff] was suing as the assignee of [the Patient's] claim or in its own capacity on the purported misrepresentations before filing this action." Def. Mot. at 6. However, even assuming Defendants are correct about this obligation, Plaintiff has fulfilled the obligation because Plaintiff's complaint makes it clear that Plaintiff is bringing its misrepresentation causes of action on its own behalf. Compl. ¶¶ 71, 78.

Second, Defendants argue that Plaintiff should not be allowed to "pursue its state law claims" for intentional and negligent misrepresentation (Plaintiff's third and fourth causes of action) as alternatives to its federal claims (Plaintiff's first and second causes of action). Def. Mot. at 7. Defendants' argument is not well-taken. At the pleading stage, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The Court also notes that Plaintiff's federal claims do not seem to be inconsistent with Plaintiff's claims for intentional and negligent misrepresentation, and Defendants do not present reasons for why Plaintiff's federal claims are inconsistent with Plaintiff's state law claims.

12
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

preempted under 29 U.S.C. § 1144(a). The Court thus turns to whether Plaintiff has alleged these claims with sufficient particularity.

### 2. Rule 9(b)

Defendants' second argument is that Plaintiff's claims for intentional and negligent misrepresentation should be dismissed because Plaintiff has failed to allege those causes of action with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Def. Mot. at 7–9. Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted). Further, "[w]here fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility." *United States ex. rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015).

Both of Plaintiff's intentional and negligent misrepresentation claims[4] are subject to Rule 9(b)'s heightened pleading requirements. The Court disagrees with Defendants' argument and

---

[4] Although "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, . . . most district courts in California hold that it does." *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, *7 (N.D. Cal. Sept. 17, 2012).

13
Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

finds that Plaintiff's intentional and negligent misrepresentation causes of action satisfy Rule 9(b)'s requirements. As noted above, under Rule 9(b), a plaintiff must allege an account of the (1) time; (2) place; and (3) specific content of the false representations; as well as (4) the identities of the parties to the misrepresentations. *Swartz*, 476 F.3d at 764. In the instant case, Plaintiff's complaint meets all of these criteria. First, as to time and place, Plaintiff alleges that the purported misrepresentations were made during two phone calls that took place in mid-January and mid-March 2016. Compl. ¶¶ 37–38. Second, as to the content of the misrepresentations and "the names of the employees or agents who purportedly made the statements or omissions," *DJO Global Inc.*, 114 F. Supp. 3d at 1016, Plaintiff alleges that individuals named "Jennifer" and "Heidi" who spoke on behalf of Defendants told Plaintiff that Defendants would pay certain percentages of the Patient's inpatient hospital charges even though Defendants knew that Defendants would actually pay percentages "of a much smaller base amount, e.g., 120% of Medicare rates." Compl. ¶¶ 68, 75.

Defendants argue that Plaintiff has not sufficiently pled its intentional and negligent misrepresentation claims because Plaintiff's complaint alleges only that "Jennifer" and "Heidi" said Defendants would pay certain percentages—"70%," "80%," and "100%"—without specifying the base amounts to which those percentages applied. Def. Mot. at 8. Defendants' argument is unavailing. Although Plaintiff's allegations about the representations made by "Jennifer" and "Heidi" do not specifically refer to any base amounts, Plaintiff's complaint also alleges that the "customary meaning" of those representations about paying for certain percentages, in the context of "insurance coverage statements," is that Defendants would pay those percentages *of the Plaintiff's charges*. *Id.* ¶ 40; *see* Pl. Opp. at 13. Taking these allegations as true—as the Court is required to do at this stage of the proceedings—Plaintiff has sufficiently alleged that "Jennifer" and "Heidi" "affirmatively represented to [Plaintiff] that [Defendants] would cover" certain percentages of Plaintiff's charges. Compl. ¶¶ 67, 74.

Defendants also argue that Plaintiff has not sufficiently pled its causes of action for intentional and negligent misrepresentation because under the facts alleged, Plaintiff's reliance on

14

the representations made by "Jennifer" and "Heidi" was not reasonable. Def. Mot. at 8. Under California law, in order to state a cause of action for either intentional or negligent misrepresentation, a plaintiff must allege facts showing that the plaintiff's reliance on the misrepresentation was reasonable. *See Century Sur. Co. v. Crosby Ins., Inc.*, 124 Cal. App. 116, 129 (2004); *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986). Defendants point out that according to Plaintiff's complaint, there were inconsistencies between what "Jennifer" told Plaintiff and what "Heidi" told Plaintiff. Specifically, while "Jennifer" told Plaintiff that inpatient care "would initially be covered at 70% up to $10,000, and then would be paid at 100% thereafter," "Heidi" told Plaintiff two months later that Defendants "would actually pay 80% for inpatient care up to $20,000, and after that point, would pay 100% for such care." Compl. ¶¶ 37–38. Defendants argue that under the facts alleged, these inconsistencies made it unreasonable for Plaintiff to rely upon these coverage statements to render inpatient care to the Patient.

The Court is not persuaded by Defendants' argument. First, the inconsistencies did not exist until they were created by the later phone conversation with "Heidi." Thus, the inconsistencies could not have made unreasonable any reliance by Plaintiff *before* the later phone conversation with "Heidi" took place in mid-March 2016. Second, even with these inconsistencies, the two phone calls still conveyed that Defendants would pay Plaintiff a large proportion (either 70% or 80%) of Plaintiff's charges, and would eventually pay Plaintiff 100% of Plaintiff's charges once a spending threshold was met. Therefore, the Court cannot conclude that under the facts alleged, Plaintiff's belief that Defendants would pay Plaintiff a large proportion of Plaintiff's charges—as opposed to a large proportion of a much smaller base amount—was unreasonable as a matter of law.

As a result, the Court finds that Plaintiff has pled its causes of action for intentional and negligent misrepresentation with sufficient particularity to satisfy Rule 9(b)'s heightened pleading requirements. Thus, the Court DENIES Defendants' motion to dismiss these causes of action.

**IV. CONCLUSION**

15

Case No. 17-CV-03887-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular:

1. Defendants' motion to dismiss Plaintiff's second cause of action, for violation of 42 U.S.C. § 300gg-6(b), is GRANTED with leave to amend.

2. Defendants' motion to dismiss Plaintiff's third cause of action, for intentional misrepresentation, is DENIED.

3. Defendants' motion to dismiss Plaintiff's fourth cause of action, for negligent misrepresentation, is DENIED.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories. Plaintiff may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: November 8, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge