1   ERIC D. CHAN (State Bar No. 253082)
    **HOOPER, LUNDY & BOOKMAN, P.C.**
2   1875 Century Park East, Suite 1600
    Los Angeles, California 90067-2517
3   Telephone: (310) 551-8111
    Facsimile: (310) 551-8181
4   E-Mail:    echan@health-law.com

5   Attorneys for Salinas Valley Memorial Hospital
    System

6

7

8                   **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10

11  SALINAS VALLEY MEMORIAL                    Case No. 17-CV-03887-LHK
    HEALTHCARE SYSTEM,
12                                             **PLAINTIFF SALINAS VALLEY**
                                               **MEMORIAL HEALTHCARE SYSTEM'S**
13                Plaintiff,                   **OPPOSITION TO ELAP SERVICES,**
                                               **LLC'S MOTION TO DISMISS**
14        vs.

15  ENVIROTECH MOLDED PRODUCTS,                Date:      May 31, 2018
    INC., ENVIROTECH MOLDED                    Time:      1:30 p.m.
16  PRODUCTS, INC. EMPLOYEE BENEFIT            Crtrm.:    8
    PLAN, and ELAP SERVICES, LLC,
17                                             Hon. Judge Lucy H. Koh
                  Defendants.
18                                             Trial Date:           None Set

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................. 1

II. RELEVANT FACTS ........................................................................................ 2

    A.  The Plan and the Benefit Claims At Issue ........................................... 2

    B.  Defendant ELAP Was Primarily Responsible for Denying Further Payment
        to the Hospital ....................................................................................... 2

III. PROCEDURAL HISTORY ............................................................................. 3

    A.  The Motion to Dismiss the Original Complaint .................................. 3

    B.  Initial Case Management Conference ................................................... 4

    C.  The Envirotech Defendants Answer the FAC ...................................... 4

    D.  Despite Coordinating Envirotech's Legal Defense, ELAP Refuses to Reveal
        Whether It Is Liable for the Claims At Issue ....................................... 4

IV. ELAP IS A PROPER ERISA DEFENDANT UNDER *CYR* ....................... 5

    A.  Fiduciaries That Have Authority to Deny Appeals And Interpret the Plan
        Are Proper ERISA Defendants ............................................................. 5

    B.  ELAP Is an Admitted Fiduciary With Respect to "The Plan's Procedures for
        Claims and Appeals" ............................................................................ 6

    C.  ELAP Is A Proper Defendant to the Second ERISA Cause of Action .. 6

V.  ELAP FAILS TO PROVE BENEFITS WERE PAID CORRECTLY (FIRST
    CAUSE OF ACTION) .................................................................................... 8

    A.  The First Cause of Action Properly Seeks Benefits Under the Plan ...... 8

    B.  The Provisions of the SPD Limiting Payment to Hospitals to 120% of
        Medicare Cannot Be Enforced Under ERISA's Disclosure Rule ......... 9

        1.  In the Ninth Circuit, Inadequate Limitations on Benefits Are
            Unenforceable ........................................................................... 9

        2.  The Provision Cited by ELAP Does Not Satisfy the Disclosure Rule ........ 10

VI. THE SECOND AMENDED CAUSE OF ACTION HAS BEEN PROPERLY
    PLED AGAINST ALL DEFENDANTS .......................................................... 11

VII. THE HOSPITAL DOES NOT ASSERT ITS FRAUD CLAIMS AGAINST ELAP ......... 15

VIII. CONCLUSION .............................................................................................. 15

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFF SVMHS'S OPPOSITION TO ELAP SERVICES, LLC'S MOTION TO DISMISS

1245350.1

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,*
    293 F.3d 1139 (9th Cir. 2002)...................................................................................9

*Cyr v. Reliance Standard Life Insurance Company,*
    642 F.3d 1202 (9th Cir. 2011)...........................................................................5, 6, 7

*Firestone Tire & Rubber Co. v. Bruch,*
    109 S. Ct. 948 (1989) ........................................................................................7

*King v. Blue Cross & Blue Shield of Illinois,*
    871 F.3d 730 (9th Cir. 2017)...................................................................9, 10, 11

*Scharff v. Raytheon Co. Short Term Disability Plan,*
    581 F.3d 899 (9th Cir. 2009)....................................................................................9

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.,*
    770 F.3d 1282 (9th Cir. 2014)...........................................................6, 7, 9, 10

### FEDERAL STATUTES

29 U.S.C.
    § 1132(a)(1)(B) .................................................................................................6
    § 1185d ...........................................................................................................11

42 U.S.C.
    § 300gg-6.........................................................................................................12
    § 18022(c)(1) ................................................................................3, 6, 11, 12
    § 18022(e).......................................................................................................14

### FEDERAL REGULATIONS

29 C.F.R. § 2520.102-2(b) ....................................................................................10

45 C.F.R.
    § 148.220(b)(4).................................................................................................14
    § 156.130(c) .......................................................................................................3
    § 156.155 ........................................................................................................14

80 FR 72192-01, at 72212-13 ..............................................................................14

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

# I.    <u>INTRODUCTION</u>

Plaintiff Salinas Valley Memorial Healthcare System ("SVMHS" or "the Hospital") added Defendant ELAP Services, LLC ("ELAP") as a new defendant in the First Amended Complaint after learning that ELAP was paying for the Envirotech Defendants' legal defense.

During the appeals process, ELAP explicitly claimed to act as the formally-designated "Plan Administrator" for the purposes of considering and denying the Hospital's appeals – in effect, stepping into the shoes of the real Plan Administrator for this purpose. ELAP's attorneys have what appears to be complete control over Envirotech's legal defense. The Hospital suspects that ELAP may even be ultimately responsible for paying the claims at issue in this lawsuit, though it has yet to get a straight answer to its repeated inquiries.

ELAP now seeks to be dismissed from this lawsuit because it says it is not a proper defendant. But the First Amended Complaint provides ample detail about ELAP's crucial fiduciary role during the administrative process. Established Ninth Circuit law holds that this is enough to render ELAP a defendant to an ERISA benefits claim <u>even if</u> ELAP is not ultimately responsible for paying the benefits. This Court should certainly not let ELAP escape liability based solely upon the description of ELAP's fiduciary duties that is set forth in the Summary Plan Description (SPD). ELAP's actions speak louder than its words, and for this reason it must face both of the Hospital's ERISA causes of action – including its Second Cause of Action for enforcement of the Affordable Care Act's annual Maximum Out-of-Pocket (MOOP) limitation.

ELAP is not entitled to dismissal of either ERISA cause of action on the merits. Notably, both have already proceeded to discovery as against the Envirotech Defendants. Yet ELAP now attacks the Hospital' First Cause of Action for ERISA benefits on the basis that Hospital supposedly admits that Defendants paid correctly under the Plan. This is not true. The FAC merely alleges that Defendants improperly relied on one part of the Plan and deliberately ignored other, more important Plan provisions – which violates ERISA's strict disclosure requirement. ELAP does not really challenge the Second Cause of Action on the merits (other than to remark that the Hospital's theory is "convoluted"). But the Hospital's legal and factual basis for that claim is well pled in the FAC – and is summarized below for the Court's reference.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

The Hospital does not intend to pursue its fraud or misrepresentation claims against ELAP. Other than that, the Hospital respectfully requests that the Court deny ELAP's Motion to Dismiss.

## II.   RELEVANT FACTS

### A.   The Plan and the Benefit Claims At Issue

Defendant Envirotech is an out-of-state company that sponsors a self-funded ERISA health benefits plan for its employees and their dependents. (Compl. ¶ 7.) "Self-funded" means that the Envirotech Molded Products, Inc. Employee Benefit Plan (the "Plan") is directly responsible for the medical benefits paid pursuant to the Plan. (*Id*. ¶ 8.) Envirotech is the sponsor of the Plan, as well as the Plan Administrator as that term is understood under ERISA. (*Id*.)

In 2016, the Hospital admitted a very ill woman ("Patient") after an accident for what turned out to be a nearly one-month stay. (Compl. ¶ 1.) The Patient was a beneficiary of the Plan during at least calendar year 2016, when the services were rendered by the Hospital (*Id*.). The Hospital obtained an assignment of all benefits under the Plan for the care it provided to the Patient. (*Id*. ¶¶ 89, 157, 168.)

The Hospital's bill for the medical services provided to the Patient totaled $264,026.21. (*Id*. ¶ 1.) Yet the Defendants, including ELAP, caused the Plan to pay just $63,581.36, which is less than a quarter of this total bill. (*Id*.) Defendants left the Patient exposed to pay the rest, and contend that no further payment is due. (*Id*.)

### B.   Defendant ELAP Was Primarily Responsible for Denying Further Payment to the Hospital

Prior to this lawsuit, the Hospital did not deal directly with the Envirotech Defendants. Rather, the Hospital dealt with two third parties after submitting its claims for reimbursement. (Compl. ¶ 17.) The first was an entity named MBA Benefit Administrators, Inc. ("MBA"), who served as the third-party claims administrator (TPA) for the Plan. (*Id*.)   MBA issued the initial Explanation of Benefits (EOB) forms, explaining what part of the Hospital's claims would be paid and what would be denied. (*Id*.)

The real decision making power, however, lay with Defendant ELAP. Every single appeal letter by the Hospital was met by a response from ELAP. (*Id*. ¶ 18.) ELAP, unlike MBA, claimed

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245350.1

1   to have fiduciary authority to interpret and apply the terms of the plan, and on that basis, denied

2   each of the Hospital's appeals without further payment.  (*Id.*)  As the First Amended Complaint

3   (FAC) explains:

4        [I]n numerous appeal denial letters that it sent in 2016 and 2017, ELAP announced
         that it was the Designated Decision Maker (the 'DDM') for the self-funded
5        EnviroTech Molded Products, Inc. Employee Benefits Plan (the 'Plan'), and
         accordingly, **ELAP acts with certain fiduciary authority** on behalf of the Plan."
6        ELAP even claimed to be the Plan Administrator for certain purposes under
         ERISA:  "In accordance with the Plan's procedures for claims and appeals which
7        may be found in the Plan documents, **for purposes of the response on appeal, the
         term 'Plan Administrator' shall be deemed to mean the DDM** [e.g., ELAP].

8

9   (*Id.* ¶ 19 (emphasis in original).)  Thus, ELAP has openly admitted it is a fiduciary of the Plan

10  with respect to the handling and payment of benefit claims and appeals.

11  ### III.   PROCEDURAL HISTORY

12  #### A.        The Motion to Dismiss the Original Complaint

13       The Hospital filed its original Complaint on July 12, 2017. (Dkt. No. 1.)  The Envirotech

14  Defendants moved to dismiss the Second Cause of Action (for enforcement of the ACA MOOP,

15  42 U.S.C. § 18022(c)(1), via ERISA, but not the First Cause of Action (for ERISA benefits).

16  (Dkt. No. 15.)  Envirotech also moved to dismiss claims against them for fraudulent and negligent

17  misrepresentation.  (*Id.*)

18       On November 8, 2017, after taking the motion to dismiss hearing off calendar, this Court

19  issued an order dismissing, without prejudice, SVMHS's Second Cause of Action, which sought

20  to enforce ACA's statutory Maximum Out-of-Pocket (MOOP) requirement, while permitting all

21  others to proceed.  (Dkt. 25, *available* at 2017 WL 5172389, at *5-*9.)  The Court dismissed the

22  Second Cause of Action after finding "Plaintiff's argument regarding 45 C.F.R. § 156.130(c),"

23  which was the only argument made by SVMHS in opposing that Motion to Dismiss, to be

24  insufficient.  (*Id.* at *5.)  But the Court also took the unusual step of observing that:

25       the Court acknowledges that self-insured plans, like Defendant Plan, **can
         circumvent** 42 U.S.C. § 18022(c)(1)'s cost-sharing limitations [e.g., ACA's
26       MOOP] **by excluding providers** of expensive services—such as **hospital and
         emergency services**—**from their networks**. This **would be inconsistent with the
27       spirit of the statutory scheme**.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

3                                                          17-CV-03887-LHK

1    *Id.* at \*4 (emphasis added) (noting "the absence of case law supporting Plaintiff's interpretation").

2    Per the Order, the First Amended Complaint was to be filed no later than December 8, 2017.

### B.    Initial Case Management Conference

During the December 6, 2017 Case Management Conference with the Court, counsel for the Hospital explained that he had learned that lawyers for ELAP were paying for the Envirotech Defendants' legal defense in this lawsuit.  (Declaration of Eric D. Chan In Support of Opposition to ELAP's Motion to Dismiss ("Chan Decl."), ¶ 3.)   Counsel for Envirotech (who is now counsel for ELAP as well) confirmed this on the conference call.  (*Id.*)  The Court then asked counsel for Envirotech whether, in addition to paying for Envirotech's defense, ELAP was also financially responsible for paying any of the benefit claims at issue.  (*Id.* ¶ 4.)   Counsel could not answer this question during the conference, however.  The Court then orally granted leave to add ELAP as a defendant in the First Amended Complaint, obviating the need for a Motion to Amend.  (*Id.* ¶ 5.)

### C.    The Envirotech Defendants Answer the FAC

A significant portion of the FAC is devoted to pleading key facts and identifying all relevant legal authorities in support of the Hospital's Second Cause of Action to enforce the MOOP.  (*See* Dkt. 36, FAC Section D, ¶¶ 30-39 (pleading facts that show the Plan represents itself to its beneficiaries as having no network of providers); FAC Section H, ¶¶ 64-143 (setting forth the ACA regulatory scheme and all authorities in support of the Second Cause of Action).)

Despite prevailing on their earlier Motion to Dismiss, the Envirotech Defendants chose to answer the FAC, and so have declined to challenge the sufficiency of the Second Cause of Action as it is now pled.  (*See* Dkt. 39.)  The Hospital has now proceeded to discovery against on the Envirotech Defendants on all four causes of action alleged in the FAC.

### D.    Despite Coordinating Envirotech's Legal Defense, ELAP Refuses to Reveal Whether It Is Liable for the Claims At Issue

ELAP is paying for Envirotech's defense, which is why the Envirotech Defendants disclosed ELAP as an interested entity on their recent L.R. 3-15 disclosure.  (*See* Dkt. #30; accord Answer (Dkt. 39) ¶ 9 ("Defendants admit . . . ELAP is paying attorney's fees incurred by Defendants in connection with this case.").)  But Envirotech and ELAP still have yet to answer the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   question the Court posed during the Case Management Conference: is ELAP financially liable for

2   the benefit claims at issue?

3       The Defendants Envirotech responded to a first set of document requests propounded by

4   the Hospital by refusing to produce the contracts that would show whether ELAP has a financial

5   interest in this case.  (Chan Decl. ¶ 6, Ex. A.)  SVMHS sought, in particular, to discover whether

6   Envirotech has purchased "stop-loss" insurance or re-insurance from ELAP to cover benefits

7   under the Plan; or whether Envirotech has entered into an indemnification agreement with ELAP.

8   (*Id*.)  Defendants object that this information is irrelevant, even though it may very well bear on

9   the standard of review in this case, and whether, in denying the Hospital's appeals, ELAP labored

10  under a conflict of interest.

11      SVMHS has good reason to believe that such agreements exist.  After all, attorneys that

12  regularly represent ELAP appear to be coordinating and directing Envirotech's defense in this

13  lawsuit.  (Chan Decl., ¶ 7.)  Envirotech's attorney in this matter has consistently informed

14  SVMHS that she must run every decision by an Atlanta attorney named Ted Lavender, who

15  appears to act as ELAP's outside general counsel.  (*Id*.)  Counsel has also consistently represented

16  that she is merely "local counsel" in this matter, and reports to Mr. Lavender – with the

17  implication being that she is local counsel *for ELAP*.  (*Id*. ¶ 8.)  All of these factors argue strongly

18  against the dismissal of ELAP from the lawsuit at this stage.

19  **IV.   <u>ELAP IS A PROPER ERISA DEFENDANT UNDER *CYR*</u>**

20      ELAP seeks to escape liability on the basis that "it does not pay benefits" under the Plan.

21  This misrepresents Ninth Circuit law, and moreover, improperly minimizes ELAP's role in

22  connection with the reimbursement claims at issue in this lawsuit.  Even if ELAP turns out not to

23  be responsible for paying for the Patient's medical care, it acted with full authority to deny the

24  Hospital's claims.  This renders it an appropriate defendant to this lawsuit.

25      **A.   <u>Fiduciaries That Have Authority to Deny Appeals And Interpret the Plan Are</u>**

26          **<u>Proper ERISA Defendants</u>**

27      In *Cyr v. Reliance Standard Life Insurance Company*,  the Ninth Circuit sitting en banc

28  held that a "logical defendant[s]" to an ERISA benefits claim include not only the formal

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   administrator of the plan, but any entity with "authority to resolve benefit claims, **or** any

2   responsibility to pay them." 642 F.3d 1202, 1207 (9th Cir. 2011) (emphasis added).  *Cyr*

3   "overruled previous decisions in which [the Ninth Circuit ] had held 'that only a benefit plan itself

4   or the plan administrator of a benefit plan covered under ERISA is a proper defendant' in a suit for

5   benefits under 29 U.S.C. § 1132(a)(1)(B)."  *Spinedex Physical Therapy USA Inc. v. United*

6   *Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014).

7          *Cyr* does <u>not</u> limit the universe of ERISA defendants only to those who have some

8   responsibility to pay claims under the Plan.  Entities with "authority to resolve benefit claims" are

9   also proper ERISA defendants regardless of whether they are also financially liable to pay them.

10  *Id*. at 1207.  In *Spinedex*, the Ninth Circuit confirmed that "*de facto* plan administrators that

11  improperly deny or cause improper denial of benefits" are <u>also</u> appropriate ERISA defendants.

12  *Spinedex*, 770 F.3d at 1297.  Such entities are proper defendants under ERISA to the extent they

13  are fiduciaries of the plan, e.g., they "exercise[] any discretionary authority or discretionary

14  control respecting management of" the plan.  *Id*. (remanding for determination of whether claims

15  administrator, who was not financially responsible for benefits claims, satisfied this test).

16          **B.      ELAP Is an Admitted Fiduciary With Respect to "The Plan's Procedures for**

17          **Claims and Appeals"**

18          ELAP does not and cannot dispute that in each of its letters denying the Hospital's appeals,

19  it announced that it "acts with certain fiduciary authority on behalf of the Plan," and considered

20  itself to be the formal "Plan Administrator" with respect to "the Plan's procedures for **claims** and

21  **appeals**."  (FAC ¶ 19 (emphasis added).  Indeed, ELAP was the <u>only</u> entity the Hospital dealt with

22  in connection with its appeals of the underpayments at issue.  (*Id*. ¶¶ 18-20; *accord* Envirotech's

23  Answer to FAC (Dkt. 39), ¶ 20 ("Defendants admit ELAP was a fiduciary for purposes of

24  deciding certain appeals.").  There can be no doubt that ELAP is a fiduciary and proper ERISA

25  defendant within the meaning of *Cyr* and *Spinedex*.

26          **C.      ELAP Is A Proper Defendant to the Second ERISA Cause of Action**

27          ELAP, like the Envirotech Defendants, does not directly challenge the sufficiency of the

28  Second Cause of Action, for enforcement of 42 U.S.C. § 18022(c)(1), which seeks to require the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFF SVMHS'S OPPOSITION TO ELAP SERVICES, LLC'S MOTION TO DISMISS

Plan to cover to the unpaid balance bills under the Plan.  ELAP merely insists that the scope of its fiduciary duty – as defined in the SPD – is not sufficient for it to be rendered a defendant to the Second Cause of Action.  *See, e.g.*, Motion to Dismiss, Dkt. 42 at 7:5-9 ("Putting aside Salinas' convoluted analysis of the ACA's MOOP provisions . . . this cause of action should be dismissed against ELAP because ELAP has no obligation or authority under the Plan with respect to the MOOP provisions.")  According to ELAP, it was only a fiduciary with respect to the "Claim Review and Audit Program section of the Plan."  (Opp'n at 2:8-9.)  This is disingenuous.

In analyzing who is a proper ERISA defendant, what matters is how ELAP acted, not the precise wording of the Summary Plan Description.  A fiduciary is any entity that "<u>exercises</u> any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan." *Spinedex*, 770 F.3d at 1298 (emphasis added) (quoting 29 U.S.C. §1002(21)(A)).  "[O]ne is a fiduciary to the extent he <u>exercises</u> *any* discretionary authority or control." *Firestone Tire & Rubber Co. v. Bruch*, 109 S. Ct. 948, 956 (1989) (underline emphasis added, italics in original).

As explained above, <u>ELAP wrote every appeal denial letter for the claims at issue.</u>  (FAC ¶¶ 19-20.)  ELAP even informed the Hospital that ELAP was the formal "Plan Administrator" – a statutorily-defined term with special significant under ERISA – with respect to "the Plan's procedures for **claims** and **appeals**." (*Id.* emphasis added.)   Indeed, during the administrative process, the Hospital raised its concerns regarding the Plan's failure to comply with the MOOP in a letter that was addressed to all three entities at issue in this case: Envirotech, MBA, and ELAP. (Chan Decl., ¶ 9, Ex. B.)  But the response to this letter came from ELAP, and ELAP alone.  (*Id.* ¶ 10, Ex. C.)  ELAP rejected the arguments made by the Hospital and announced, "[t]he Plan Administrator considers the internal administrative process concluded."  (*Id.*)  Where, as here, an administrator for the plan purports to act with such authority, neither *Cyr* nor *Spinedex* requires anything more.  The Court should not permit ELAP to escape responsibility for its actions.

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

V. **ELAP FAILS TO PROVE BENEFITS WERE PAID CORRECTLY (FIRST CAUSE OF ACTION)**

Next, ELAP seeks dismissal of the Hospital's First Cause of Action on the merits. At the outset, it is curious that Defendants – who are all represented by the same counsel – seek to challenge the First Cause of Action on the merits only now. The First Cause of Action has already proceeded to discovery as against Envirotech. (*See* Dkt. 39 (Envirotech's Answer to FAC).) Also, the original Motion to Dismiss brought by the Envirotech Defendants did not ask to dismiss the First Cause of Action, and took its validity for granted. (Dkt. 15.)

Whatever the reason, ELAP now asserts that the FAC "admits" that the Plan paid the claims at issue correctly, and this merits dismissal of the First Cause of Action. But the FAC explains in great detail why the Plan paid too little. ELAP's argument boils down to a facile insistence that it is right that the Plan can never pay more than 120% of Medicare rates. This does not stand up to scrutiny in light of the strict disclosure requirements that ERISA imposes on the SPD. Because the supposed limitation on benefits to 120% of Medicare was not adequately disclosed to Plan beneficiaries, it cannot be enforced in this litigation.

A. **The First Cause of Action Properly Seeks Benefits Under the Plan**

ELAP tries to twist the allegations of the FAC into a so-called admission that it paid the claims correctly under the Plan. But paragraph 162 of the FAC, which is part of the First Cause of Action for ERISA benefits, does <u>not</u> say that Defendants paid the correct amount under the Plan. Rather, the FAC explains that Defendants' interpretation was arbitrary and capricious because the SPD provisions they relied upon conflict with (1) the MOOP provision in the Plan itself – which purports to limit Plan members' out-of-pocket liability in any given calendar year – and (2) the Plan's definition of Reasonable and Customary, which the Hospital is informed and believes does not limit payment to 120% of Medicare rates. (Compl. ¶¶ 162, 163.) The FAC explains why, under governing ERISA disclosure principles it was improper for Defendants to rely upon just one set of provisions, buried in the plan, to the exclusion of other, more important provisions.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245350.1

B.      **The Provisions of the SPD Limiting Payment to Hospitals to 120% of Medicare Cannot Be Enforced Under ERISA's Disclosure Rule**

ELAP also insinuates that the Hospital has not identified the precise provisions of the Plan that it believes have been violated.  This is not true for the reasons just explained.  It is also ironic, given that that Defendants withheld a full copy of the Summary Plan Description (SPD) from the Hospital throughout the administrative process, and did not provide it – despite repeated requests – until *after* the FAC was safely on file.  (Chan Decl. ¶ 11.)   Thus, the Hospital cannot be expected to plead with greater specificity than it did.  Regardless, as the FAC predicted (*see* FAC ¶¶ 22-29, 141-143) the 120% of Medicare limitation is inadequately disclosed in the SPD, so is rendered unenforceable under ERISA's disclosure rule.

1.      In the Ninth Circuit, Inadequate Limitations on Benefits Are Unenforceable

Because SPDs serve as "the employee's primary source of information regarding employment benefits," *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1143 (9th Cir. 2002), they are subject to a number of statutory and regulatory requirements. In particular, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" must be clearly disclosed in the SPD.  *Scharff v. Raytheon Co. Short Term Disability Plan,* 581 F.3d 899, 904 (9th Cir. 2009) (internal quotation marks omitted) (quoting 29 U.S.C. § 1022(b)).  In the Ninth Circuit, inadequately disclosed limitations on benefits simply may not be enforced.  For instance, *Spinedex* barred the enforcement of a plan provision that restricted the time that a healthcare provider had to sue pursuant to its assignments of benefits.  770 F.3d at 1294–95.  And in *King v. Blue Cross & Blue Shield of Illinois*, the Ninth Circuit applied this principle to hold unenforceable a lifetime maximum on benefits buried deep within a self-funded health plan.  871 F.3d 730, 740-744 (9th Cir. 2017).

Regulations promulgated by the Department of Labor pursuant to ERISA Section 1022 require adequate disclosure of provisions that limit or restrict beneficiaries' use of plan benefits:

> (b) General format.  The format of the summary plan description <u>must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries.  Any description of exception, limitations, reductions, **and other restrictions of**</u> plan benefits **shall not be minimized, rendered obscure or <u>otherwise made to appear unimportant</u>**.  Such exceptions, limitations,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

reductions, or restrictions of plan benefits shall be described or summarized in a manner **not less prominent** than the style, captions, printing type, and prominence used to describe or summarize plan benefits.  The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.  The description or summary of restrictive plan provisions need not be disclosed in the summary plan description **in close conjunction** with the description or summary of benefits, **provided that** adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(b) (emphasis added).  "That is, either (1) the description or summary of the restrictive provision must be placed 'in close conjunction with the description or summary of benefits,' or (2) the page on which the restrictive provision is described must be 'noted' 'adjacent to the benefit description.'"  *Spinedex*, 770 F.3d at 1295.

### 2. The Provision Cited by ELAP Does Not Satisfy the Disclosure Rule

ELAP relies upon a supposed cap on payment to hospitals that is set forth on page 46, as part of the "Claim Review and Audit Program" section.  But none of the sections that summarize plan benefits disclose the 120% of Medicare limitation in close conjunction.  It is not disclosed in the Schedule of Medical Benefits, for instance (*see* J. Sprau Decl. (Dkt. 42-1), Ex. 1, at pp. 13-24). Nor is it disclosed in the Medical Covered Expenses section (*id*. at pp. 25-35).  It is not even mentioned in the Plan Exclusions section (*id*. at pp. 36-41).  The limitation is not in close conjunction, nor is there any reference, adjacent to a benefit discretion, to "the page on the restrictions are described is noted."  29 C.F.R. § 2520.102-2(b).  Simply put, the 120% of Medicare limitation is found only in the back of the SPD, and would easily be missed by an average plan participant.

In evaluating whether an SPD complies with the disclosure rule, the bigger picture is important too.  The Ninth Circuit holds that any interpretation of an SPD that "requires the average plan participant to read the entire document" and "notice the subtle shift in font type and size" between different sections in order to "intuit" a limitation on benefits cannot be enforced. *King*, 871 F.3d at 742.  The SPD here does precisely that, with its rampant use of unexplained italics, underline and bolded text, in apparently haphazard fashion, oblique references to other limitations buried deep in the document.  The only thing the Plan discloses upfront is that it will not pay amounts "in excess of the usual, customary, and reasonable **fees**" (J. Sprau Decl., Ex. 1, at

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFF SVMHS'S OPPOSITION TO ELAP SERVICES, LLC'S MOTION TO DISMISS

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

p. 12).  This is a term often used to describe the prevailing rates charged by healthcare providers like the Hospital, and an average plan member would not understand that to mean that the Plan will never pay more than 120% of Medicare.

This is especially true with respect to the Plan's MOOP threshold of $6,000.  (*Id.* p. 13.)  The SPD nowhere explains that the Plan will limits payment to 120% of Medicare <u>even after the MOOP threshold of $6,000 for an individual has been met</u> in calendar year 2016.  Even if the SPD could properly be read as limiting payment of certain claims to 120% of Medicare, then, it must still cover all out of pocket amounts above the MOOP threshold, once the Plan itself deems the MOOP threshold to be met.  Again, the only exclusion the Plan discloses with respect to amounts above the MOOP is that it will not pay amounts "in excess of the usual, customary, and reasonable fees."  (*Id.* at p. 12.)  Since Defendants determined the Plan's MOOP threshold to be met in this case, the Hospital must be permitted to seek its usual, customary, and reasonable fees through the First Cause of Action.

## VI.    THE SECOND AMENDED CAUSE OF ACTION HAS BEEN PROPERLY PLED AGAINST ALL DEFENDANTS

The Second Cause of Action has proceeded to discovery as to the Envirotech defendants.  In the present Motion, ELAP argues only that it is not a proper defendant to this claim.  ELAP does not truly argue that Second Cause of Action does not state an appropriate claim for relief, and it cannot seek dismissal on the merits for the first time on reply.  To the extent the Court interprets ELAP's Motion to Dismiss as a challenge to the merits of the MOOP issue, however, the FAC explains SVMHS's entitlement to assert the Second Cause of Action for enforcement of 42 U.S.C. § 18022(c)(1) in extraordinary detail.  In particular, the Hospital encourages the Court to read pages 13 through 29 of the FAC (FAC ¶¶ 67-140), the key points of which are summarized here:

**The MOOP requirement applies to self-funded plans** (FAC ¶¶ 80-84.)  The Ninth Circuit has confirmed that many of ACA's protections are directly applicable to self-funded, employer sponsored health plans. *See King*, 871 F.3d at 7398.  *King* explained that the ACA directly amended Section 715 of ERISA (29 U.S.C. § 1185d) to incorporate the ACA protections found in part A of title XXVII of the Public Health Service Act (PHSA).  *Id.*  These protections

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   included, but were not limited to, the ACA ban on lifetime maximums.  *Id.*  The MOOP

2   requirement at issue is found in ACA Section 2707 (42 U.S.C. §300gg-6), which renders the

3   MOOP requirement of ACA Section 1302(c)(1) (42 U.S.C. § 18022(c)(1)) applicable to "group

4   health plans," including those governed by ERISA.  Section 2707 is found in part A of title XXVII

5   of the Public Health Service Act (PHSA), and so is made directly applicable to self-funded ERISA

6   health plans via ERISA Section 715.

7   **ACA's scheme gave employers like Envirotech incredibly strong incentives to cover**

8   **emergency care and inpatient hospitalization** (FAC ¶¶ 70-79.)  The Court noted in its previous

9   Order that self-funded plans are not obligated to cover Essential Health Benefits (EHBs).  This is

10  true.  But ACA does provide *significant* incentives for an employer like Envirotech to cover

11  hospital care.  If a group health plan <u>does not</u> "provide substantial coverage" for inpatient hospital

12  benefits, then the sponsoring employer becomes subject to the dreaded ACA "employer mandate"

13  – and potentially subject to a stiff per-employee excise tax.  (FAC ¶¶ 70-79 (citing, among other

14  things, regulations and other written guidance from the Department of Treasury and Department of

15  Health & Human Services).)  The "optional" nature of EHB coverage under self-funded plans

16  does not argue against application of the MOOP here, against the Envirotech Plan.

17  **The three federal agencies tasked with implementing ACA's MOOP have issued**

18  **extensive written guidance supporting the Hospital's interpretation** (FAC ¶¶ 107-140).

19  The Department of Health & Human Services (HHS), the Department of Treasury, and the

20  Department of Labor (DOL) –  the federal agencies with primary responsibility for implementing

21  ACA – have issued substantial guidance on how ACA's MOOP should apply to self-funded

22  ERISA health plans that supports the Hospital's reading of the "term non-network provider."

23  In this guidance, HHS, Treasury and Labor establish that ACA's MOOP provision serves

24  as a crucial check against plans that seek to forego having a contracted provider network with

25  respect to one or more healthcare services or procedures covered under the Plan.  (*Id.*)  The three

26  agencies explain that, if a plan seeks to implement so-called "reference pricing" – a fixed amount

27  paid for a given procedure, disclosed in advance  – *instead of* having a network of contracted

28  providers, it must take affirmative and thoughtful steps to ensure "adequate access to quality

1    providers at the reference price.  (Compl. ¶ 137 (citing Affordable Care Act Implementation FAQs

2    (Set 31).)  If the plan fails to do so, the ERISA plan will "not be considered to have established a

3    network for purposes of [PHSA] section 2707(b) . . . ."   (Id.)[1]

4         In other words, HHS, Treasury, and DOL all agree that a self-funded plan that does not

5    contract with hospitals, and which pays an inadequate, fixed amount for hospital services, must

6    also pay all balance billing amounts after the MOOP is met (e.g., pursuant to Section 1302(c)(3)

7    (B) via Section 2707(b)).  This is precisely because there would no "non-network providers" under

8    the Plan with respect to those services – the definition urged by the Hospital in this lawsuit.  The

9    three agencies were acutely concerned that a reference pricing structure "may be a subterfuge for

10   the imposition of otherwise prohibited limitations on coverage, without ensuring access to quality

11   care and an adequate network of providers."  (FAC ¶ 127 (citing Affordable Care Act

12   Implementation FAQs (Set 19).)   This dovetails with the Court's own concerns in its earlier Order

13   regarding "the spirit" of ACA's statutory scheme.  See 2017 WL 5172389, at *4.

14        It is telling that the fact that all of the key federal agencies that oversee ACA viewed the

15   MOOP statute as a crucial hurdle for self-funded plans.  Plans who seek to experiment with

16   "reference pricing" for a select set of elective procedures will virtually always have a contracted

17   network to provide all of other medical services that the plans cover.  (See, e.g., FAC ¶¶ 115-116.)

18   Yet, depending on how the reference prices are set and the safeguards in place, such plans may

19   still not be deemed to have established a network for purposes of ACA's MOOP, and be required

20

21   _____

22   [1] A "reference pricing" model means that a plan sets a "reference price" for certain kinds of
     elective procedures, such as a knee replacement.  (FAC ¶ 108.)  The "reference price" is explicitly

23   disclosed to plan members in advance – usually in the SPD – and represents the maximum price
     that the plan will pay for the procedure.  (Id.)  The only "in-network providers" for a service

24   subject to the reference price are those providers who agree to accept the reference price for the
     particular procedures at issue as payment in full.  (Id. ¶ 111.)  In order to work properly, the

25   "reference prices" for each procedure must also be thoughtfully set so that a sufficient number of
     facilities in a given geographic region will accept them as payment in full. (Id. ¶ 114.)  If prices

26   are set too low, and no provider will accept the price; the result is both inadequate coverage and an
     inadequate network of providers.  (Id.)   ELAP has publicly admitted that by paying at a fixed

27   percentage of Medicare rates, it is engaging in a reference pricing scheme.  (Id. ¶ 122 (interview

28   with ELAP spokesperson).)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  to pay the outstanding balance bills.  This argues very strongly in favor of the Hospital's urged

2  definition of a "non-network provider" under ACA Section 1302(c)(1) and 2707(b).

3  **Other ACA regulations confirm that the MOOP protects patients from balance bills**

4  **when there is no network of hospitals**.  ACA Section 2719A, another provision that ACA makes

5  applicable to self-funded ERISA plans, protects patients by ensuring that they do not pay more

6  when they go to the emergency room of an *out-of-network* hospital than they would if they had

7  visited an *in-network* hospital.  Regulations promulgated by HHS pursuant to Section 2719A

8  confirm that these protections apply only to "a plan or health insurance coverage with a network of

9  providers that provide benefits for emergency services."  80 FR 72192-01, at 72212-13.  Section

10 2719A therefore does not apply here, because the Plan *has* no out-of-network hospitals or in-

11 network hospitals.  This complementary part of ACA's regulatory scheme confirms that ACA not

12 only distinguishes between networks of different providers; but that networks of hospitals that can

13 provide emergency services are crucial.

14 **The Plan did not offer "indemnity" or catastrophic" benefits.**  Last, the MOOP

15 mandate applies because Envirotech held out the Plan as a full, ACA-compliant health plan for its

16 employees.  Congress' broad intent in passing the ACA was to ensure that healthcare coverage, no

17 matter the source, would provide substantial benefits in a serious medical emergency.  Professor

18 Jonathan Gruber, widely known as the 'architect' of the ACA, specifically criticized 'mini-med'

19 or 'indemnity' plans "that don't necessarily include annual or lifetime limits, but instead impose a

20 reimbursement schedule to the consumer which is well below the likely cost of the service."

21 (Compl. ¶¶ 99-100 (emphasis added).)  Congress took this advice by enacting the MOOP.

22 ACA still allows what are known as "catastrophic" or "mini-med" plans, but only under

23 narrowly circumscribed conditions.  The Plan was not an ACA-compliant fixed indemnity plan.

24 *See* 45 C.F.R. § 148.220(b)(4).  If it were, ACA would have required it to warn, in large type in

25 the enrollment materials, that it was not *real* health insurance.  (*Id.*)  Nor was it a "catastrophic"

26 plan under ACA's scheme, which is typically available only to individuals under 30 years of age.

27 *See, e.g.*, 42 U.S.C. § 18022(e); 45 C.F.R. § 156.155.  What Envirotech really wants to offer is the

28 *illusion* of coverage without any of the accompanying burdens.  ACA does not permit it to do so.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## VII.    THE HOSPITAL DOES NOT ASSERT ITS FRAUD CLAIMS AGAINST ELAP

The FAC asserts the Third and Fourth Causes of Action (for fraudulent and negligent misrepresentation) "against all defendants."  This was an oversight. The Hospital seeks to bring these state law causes of action against the Plan and its sponsor (e.g., the Envirotech Defendants) because their representatives misrepresented the level of payment that the Hospital would receive. The Hospital does not assert the Third or Fourth Causes of Action against ELAP.

## VIII.    CONCLUSION

ELAP is not some benevolent stranger in this proceeding.  To the contrary: no one was more responsible than ELAP for denying the Hospital fair payment under the Plan.  Even today, ELAP pays for and directs Envirotech's legal defense of this case, through its counsel on both sides of the country.  ELAP may even have agreed to assume full liability for the underpaid claims at issue – and if so, it should be required to reveal this hidden interest.  For the reasons explained herein, the Hospital respectfully requests that the Court deny ELAP's Motion to Dismiss.


Dated:  March 1, 2018                              HOOPER, LUNDY & BOOKMAN, P.C.



                                        By:  _____/s/ Eric D. Chan_____
                                                ERIC D. CHAN
                                        Attorneys for Salinas Valley Memorial Hospital System

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181