United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SALINAS VALLEY MEMORIAL HEALTHCARE SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>ENVIROTECH MOLDED PRODUCTS, INC., et al.,<br><br>Defendants. | Case No. 17-CV-03887-LHK<br><br>**ORDER GRANTING ELAP'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

Plaintiff Salinas Valley Memorial Healthcare System ("Plaintiff") sues Envirotech Molded Products, Inc. ("Envirotech"), Envirotech Molded Products Inc. Employee Benefit Plan (the "Plan"), and ELAP Services, LLC ("ELAP") (collectively, "Defendants") for causes of action arising from Defendants' alleged failure to properly pay Plaintiff for medical care that Plaintiff provided to a beneficiary of the Plan. *See* ECF No. 36 ("FAC"). Before the Court is ELAP's motion to dismiss Plaintiff's first amended complaint. ECF No. 42 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS ELAP's motion to dismiss.

**I.  BACKGROUND**

## A. Factual Background

Plaintiff is a "public hospital district and health system" located in Monterey County, California. FAC ¶ 6. Defendant Envirotech is a Utah corporation with its primary place of business in Salt Lake City, Utah. *Id.* ¶ 7. Plaintiff alleges that Defendant Envirotech "is the designated Plan Administrator," "Named Fiduciary," and sponsor of Defendant Plan, which is a self-insured ERISA health benefits plan. *Id.* ¶¶ 7–8. Plaintiff further alleges that Defendant ELAP is a "limited liability corporation organized under the laws of the State of Pennsylvania" that "acted as the Plan's claims fiduciary." *Id.* ¶ 9.

In 2016, Plaintiff admitted a very ill woman (the "Patient")[1] on two separate occasions for "intensive inpatient care." *Id.* ¶ 1. At that time, the Patient was a beneficiary of Defendant Plan. *Id.* ¶ 8. In mid-January 2016, "when the Patient was still at [Plaintiff's] Hospital," Plaintiff called to verify the Patient's benefits under the Plan. *Id.* ¶ 145. Plaintiff alleges that "an individual speaking on behalf of the Plan" named "Jennifer" confirmed that (1) the Plan "had a $1,000 deductible for calendar year 2016"; (2) the Plan covered, among other benefits, "semiprivate inpatient care (e.g. a hospital room)" for the Patient effective January 1, 2016; (3) "such care would initially be covered at 70% up to $10,000, and then would be paid at 100% thereafter"; and (4) "the Plan had a Maximum Out-of-Pocket limit of $3,000 in calendar year 2016, which had not yet been met." *Id.* Then, in mid-March 2016, Plaintiff called again to verify the Patient's benefits under the Plan. This time, Plaintiff spoke with someone named "Heidi," who confirmed that the Plan had a $1,000 deductible for 2016, verified that the Patient's coverage was effective January 1, 2016, and "represented that the Plan would actually pay 80% for inpatient care up to $20,000, and after that point, would pay 100% for such care." *Id.* ¶ 146. Plaintiff also alleges that Heidi disclosed only one limitation on "inpatient care benefits": "that the Plan would pay for up to 60

---

[1] Plaintiff's FAC notes that the Patient's name is not included in any public filings in order to protect the Patient's privacy, and also states that Plaintiff "has engaged in communications with all of the Defendants about the Patient, and is informed and believes they all know from the allegations contained in this Complaint the identity of the Patient." FAC ¶ 1 n.1. Defendants do not refute Plaintiff's statement or otherwise indicate that Defendants do not know the identity of the Patient.

2

days of inpatient care in any given calendar year." *Id.*

Relying on these representations, Plaintiff provided intensive inpatient care to the Patient. Plaintiff's "bill for Patient's care totaled $264,026.21." *Id.* ¶ 1. However, the Plan "paid just $63,581.36—less than a quarter of the bill." *Id.* Plaintiff asserts that the Plan arrived at this figure by relying on "the unsupported assumption that they never have to pay more than [120% of] the rate that the federal government pays under the Medicare program." *Id.* ¶ 23. Thus, instead of paying percentages of Plaintiff's charges for the services that Plaintiff provided, the Plan paid only percentages of 120% of the Medicare rates for those services. *See id.* ¶ 28. For example, instead of paying 100% of Plaintiff's charges for services rendered after the Plan's Maximum Out-of-Pocket ("MOOP") threshold was met, the Plan paid 100% of 120% of the Medicare rates for those services. *Id.* Plaintiff alleges that 120% of Medicare rates is "just a fraction of the standard charges by [Plaintiff] and all other hospitals in this geographic area (as well as many others)." *Id.* ¶ 23. Further, because Plaintiff's charges for the services it provided to the Patient were "well above 120% of Medicare," the Plan's refusal to pay any more than 100% of 120% of Medicare rates for those services "left the Patient on the hook for the bill's remainder, approximately $200,444.85." *Id.* ¶ 14.

Plaintiff alleges that the Summary Plan Description ("SPD") for the Plan did not disclose the fact that the Plan would pay only 120% of Medicare rates (at most) for covered services in "sufficiently close proximity" to the Plan's description or summary of benefits. *Id.* ¶ 143. Plaintiff also alleges that at no time during Plaintiff's two authorization and verification phone calls with the Plan's representatives did those representatives "identify any limitations or exclusions" or disclose that the Plan "would not pay more than 120% of Medicare." *Id.* ¶ 149. Plaintiff "pursued all available levels of internal appeal[s] under the Plan with respect to the Patient's medical care," but "the Plan refused to pay a cent more" than the $63,581.36 it had already paid. *Id.* ¶ 160. Plaintiff asserts that "Defendants caused this substantial underpayment" by interpreting and applying the terms of the Plan in a way that "circumvent[s]" both "[t]he Reasonable and Customary level of payment that is called for under the Plan's own governing

3
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

documents" and "[t]he Maximum Out-of-Pocket (MOOP) limitation that is set forth in the Plan's own plan documents for calendar year 2016." *Id.* ¶ 3.

**B. Procedural History**

On July 10, 2017, Plaintiff sued Defendants Envirotech and Plan in this Court. *See* ECF No. 1. Plaintiff's original complaint alleged four causes of action against Envirotech and the Plan: (1) improper denial of benefits in violation of the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1132(a)(1)(B); (2) violation of 42 U.S.C. § 300gg-6(b); (3) intentional misrepresentation; and (4) negligent misrepresentation.

On August 2, 2017, Envirotech and the Plan moved to dismiss all but Plaintiff's first cause of action in Plaintiff's original complaint. *See* ECF No. 15. Plaintiff filed an opposition on August 28, 2017, *see* ECF No. 18, and Envirotech and the Plan filed a reply on September 8, 2017. *See* ECF No. 20. Then, on November 8, 2017, the Court granted in part and denied in part the motion to dismiss. *See* ECF No. 25. Specifically, the Court granted Envirotech and the Plan's motion to dismiss Plaintiff's second cause of action for violation of 42 U.S.C. § 300gg-6(b) with leave to amend, but denied their motion to dismiss Plaintiff's third and fourth causes of action for intentional and negligent misrepresentation. *See id.*

On December 8, 2018, Plaintiff filed a first amended complaint ("FAC"). *See* FAC. Plaintiff's FAC asserts the same four causes of action as Plaintiff's original complaint, but contains additional factual allegations. *See generally id.* Further, Plaintiff's FAC adds ELAP as a defendant for all four causes of action. *See id.*

On December 21, 2017, Envirotech and the Plan answered Plaintiff's FAC. *See* ECF No. 39. Then, on January 12, 2018, ELAP filed the instant motion to dismiss Plaintiff's FAC. *See* Mot. Plaintiff opposed ELAP's motion to dismiss on March 1, 2018, *see* ECF No. 45 ("Opp."), and ELAP filed a reply on March 15, 2018. *See* ECF No. 47 ("Reply").

**II. LEGAL STANDARD**

**A. Motion to Dismiss Under Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

4
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation

5
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

ELAP moves to dismiss all four causes of action asserted against ELAP in Plaintiff's FAC. The Court first addresses Plaintiff's first cause of action against ELAP for improper denial of benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). Then, the Court addresses Plaintiff's second cause of action against ELAP for violation of the cost-sharing limitation set forth in 42 U.S.C. § 300gg-6(b). Finally, the Court addresses Plaintiff's third and fourth causes of action against ELAP for intentional and negligent misrepresentation.

#### A. Improper Denial of Benefits in Violation of 29 U.S.C. § 1132(a)(1)(B)

As discussed above, Plaintiff alleges that although Plaintiff's "bill for [the] Patient's care totaled $264,026.21," the Plan paid "just $63,581.36—less than a quarter of the bill," which "left the Patient on the hook for the bill's remainder, approximately $200,444.85." FAC ¶¶ 1, 54. Plaintiff's first cause of action asserts that this "substantial underpayment" of Plaintiff's total bill for care rendered by Plaintiff to the Patient amounted to an improper denial of benefits to the Patient that violated 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶ 3. Plaintiff notes that it brings this cause of action as "the assignee of the Patient's benefits." *Id.* ¶ 157.

Specifically, Plaintiff asserts three theories for why this "substantial underpayment" was improper. Plaintiff's first theory is that the underpayment was improper because it was caused by an interpretation of the terms of the Plan that conflicts with the Plan's MOOP provision. *See* Opp. at 8 ("[T]he FAC explains that Defendants' interpretation was arbitrary and capricious because the SPD provisions they relied upon conflict with [] the MOOP provision in the Plan itself . . . .").

6
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

Similarly, Plaintiff's second theory is that the underpayment was improper because it was caused by an interpretation of the terms of the Plan that conflicts with the Plan's definition of "Reasonable and Customary" fees. *See id.* ("[T]he FAC explains that Defendants' interpretation was arbitrary and capricious because the SPD provisions they relied upon conflict with . . . the Plan's definition of Reasonable and Customary, which [Plaintiff] is informed and believes does not limit payment to 120% of Medicare rates."). Finally, Plaintiff's third theory is that the underpayment was improper because the provisions of the SPD that were relied upon to deny or limit payment for the care that Plaintiff provided to the Patient were "inadequately disclosed." Opp. at 9; *see* FAC ¶ 162 ("Defendants' reliance on certain provisions in the SPD, termed the 'Allowable Claim Limits' provisions, was arbitrary and capricious, because the provisions . . . violate ERISA's regulations with respect to SPDs by not being properly disclosed in a way that was clear and proximate to the other coverage provisions.").

ELAP argues that Plaintiff's first cause of action, to the extent that it is asserted against ELAP, should be dismissed because (1) ELAP is not a proper defendant, *see* Mot. at 5–6; and (2) even if ELAP is a proper defendant, Plaintiff's first cause of action against ELAP still fails as a matter of law because ELAP's interpretation of the terms of the Plan was not erroneous.

For the reasons discussed below, the Court agrees with ELAP that (1) Plaintiff's first and second improper-denial theories against ELAP fail because ELAP's interpretation of the terms of the Plan was not erroneous; and (2) Plaintiff's third improper-denial theory against ELAP fails because ELAP is not a proper defendant under that theory. The Court addresses each theory in turn.

### 1. Conflict with the Plan's MOOP Provision

Plaintiff alleges that the terms of the Plan contain a MOOP provision that limited the Patient's out-of-pocket expenditures for the year 2016 to $3,000. *See* FAC ¶¶ 52–54. In its first improper-denial theory against ELAP, Plaintiff argues that ELAP (along with the other Defendants) erroneously interpreted the terms of the Plan in a way that conflicts with the Plan's MOOP provision, which in turn caused the Patient to be left "on the hook for . . . $200,444.85"—

7
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

more than three-quarters of the $264,026.21 bill. *Id.* ¶ 54.

Plaintiff's argument proceeds in two parts. First, Plaintiff argues that ELAP erroneously interpreted the terms of the Plan to allow "only . . . a fraction of patients' out-of-pocket liability to qualify for the Plan's nominal [$3,000] MOOP threshold." *Id.* ¶ 57. In other words, Plaintiff argues that ELAP erroneously "ignored tens of thousands of dollars of the Patient's medical bills"—in particular, all of Plaintiff's charges that exceeded 120% of Medicare rates—"before deeming the [$3,000] MOOP threshold to have been met." *Id.* ¶ 61. However, according to the Plan's summary plan description ("SPD") for the year 2016, which ELAP attaches to its motion to dismiss, ELAP's decision to allow only a "fraction" of the "Patient's medical bills" to count towards the $3,000 MOOP threshold—by excluding all charges exceeding 120% of Medicare rates—neither ran afoul of the Plan's terms nor conflicted with the Plan's MOOP provision.[2] While the Plan's MOOP provision, as described in the SPD, establishes an "*Out-of-Pocket Expense* Limit" of $3,000 for an individual, ECF No. 42-2 at ENV 00024, the SPD specifically defines "*Out-of-Pocket Expense*" to exclude "amounts which are in excess of the *Allowable Claim Limits* as defined in the section, 'Claim Review and Audit Program.'" ECF No. 42-3 at ENV 00101. In turn, the "Claim Review and Audit Program" section of the SPD states that the "*Allowable Claim Limits*" for "charges by a *hospital* facility" "may be based upon the *Medicare* allowed amount for the services in the geographic region plus an additional allowance of 20%." ECF No. 42-2 at ENV 00057. According to Plaintiff's complaint, Plaintiff is a hospital, and Plaintiff does not argue that its charges in the instant case are not "charges by a *hospital* facility" within the meaning of the SPD. *Id.* As a result, under the SPD's definition of "*Out-of-Pocket Expense*," the portions of Plaintiff's charges that exceeded 120% of Medicare rates did not qualify as "*Out-of-Pocket Expense[s]*," and thus ELAP's failure to count any of Plaintiff's charges above 120% of Medicare towards the $3,000 "*Out-of-Pocket Expense* Limit" did not "conflict with [] the MOOP provision in the Plan." *Id.* at ENV 00024; Opp. at 8. This is further confirmed by the

---

[2] Plaintiff does not argue that the SPD misrepresents the actual terms of the Plan in any way. For example, Plaintiff does not argue that the SPD inaccurately describes the Plan's MOOP provision.

8
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

SPD's warning—located on the page immediately preceding the page containing the MOOP provision (the "*Out-of-Pocket Expense* Limit")—that expenses that "exceed the *Allowable Claim Limits* (as defined in the section, 'Claim Review and Audit Program') are not considered to be eligible *out-of-pocket expenses* under this *Plan*." ECF No. 42-2 at ENV 00023.

Second, Plaintiff argues that "after the [$3,000] MOOP" threshold was met, ELAP erroneously interpreted the Plan to "cover[] only 120% of Medicare, rather tha[n] covering the entire portion of the bill above the [$3,000] MOOP." *Id.* ¶ 62. However, once again according to the SPD, ELAP's decision to pay Plaintiff only 120% of Medicare rates for the services that Plaintiff rendered to the Patient after the Patient's $3,000 MOOP threshold was satisfied did not violate any Plan terms or conflict with the Plan's MOOP provision. To the contrary, the SPD states that once a person has "paid the *out-of-pocket expense* limit for eligible expenses *incurred during a plan year*"—or, in other words, once a person has met the MOOP threshold—"the *Plan* will reimburse additional eligible *covered expenses incurred* during that year at 100%," but "will not reimburse any expense that is not a *covered expense*." ECF No. 42-2 at ENV 00023. In turn, the SPD defines "*Covered Expense*" to mean "a *medically necessary* service or supply which is *usual, customary and reasonable*, or within the *allowable claim limit* as defined in the section, 'Claim Review and Audit Program', and which is listed for coverage in this *Plan*." ECF No. 42-3 at ENV 00096. As explained above, the "Claim Review and Audit Program" section of the SPD states that the "*Allowable Claim Limits*" for "charges by a *hospital* facility" like Plaintiff "may be based upon the *Medicare* allowed amount for the services in the geographic region plus an additional allowance of 20%." ECF No. 42-2 at ENV 00057. Further, the SPD defines "*Usual, Customary and Reasonable*" to mean within the "*allowable claim limits*" set forth in the "Claim Review and Audit Program" section. ECF No. 42-3 at ENV 00104. Taken together, these SPD provisions indicate that (1) hospital charges are "*Covered Expense[s]*" within the meaning of the Plan only to the extent that they are within 120% of Medicare rates; and (2) to the extent that they exceed 120% of Medicare rates, hospital charges stray beyond the Plan's "*Allowable Claim Limits*" and therefore do not qualify as "*Covered Expense[s]*" within the meaning of the Plan. As

9

a result, in the instant case, even after the Patient's $3,000 MOOP threshold was satisfied, the terms of the Plan (as described in the SPD) did not require the Plan to pay any charges by Plaintiff that exceeded 120% of Medicare rates because according to the SPD, the Plan was only required to reimburse additional "*covered expenses* . . . at 100%," and was under no obligation to pay "any expense that is not a *covered expense*," after the Patient's MOOP threshold was met. ECF No. 42-2 at ENV 00023. In other words, after the Patient's $3,000 MOOP threshold was satisfied, the terms of the Plan required payment of 100% of 120% of Medicare rates for the hospital services that Plaintiff rendered to the Patient—nothing more, and certainly not "the entire portion of the bill above the [$3,000] MOOP." FAC ¶ 62. Consequently, ELAP's interpretations of the terms of the Plan, which, according to Plaintiff's FAC, caused "every single one of [Plaintiff's] reimbursement claims" to be paid "at 120% of Medicare rates," were not erroneous and did not conflict with Plan's MOOP provision. *Id.* ¶ 26. As a result, under the facts alleged in Plaintiff's FAC, Plaintiff's first improper-denial theory against ELAP fails as a matter of law.

### 2. Conflict with the Plan's Definition of Reasonable and Customary

Plaintiff's second improper-denial theory against ELAP is that ELAP's reliance on the "*Allowable Claim Limits*" provision in the SPD to limit payments for Plaintiff's hospital charges to 120% of Medicare rates was "arbitrary and capricious" because the "*Allowable Claim Limits*" provision "conflict[s] with the Plan's definition of Reasonable and Customary." FAC ¶ 162. Specifically, Plaintiff states that it "is informed and believes" that "the Plan's definition of Reasonable and Customary . . . does not limit payment to 120% of Medicare rates." Opp. at 8.

However, the SPD reveals that the "*Allowable Claim Limits*" provision is not at odds with "the Plan's definition of Reasonable and Customary." Quite to the contrary, the SPD explicitly incorporates the "*Allowable Claim Limits*" provision in its definition of "*Usual, Customary, and Reasonable*," and Plaintiff does not argue—and alleges no facts to suggest—that the SPD's definition of "Reasonable and Customary" misrepresents the Plan's actual definition of that term. Specifically, the SPD states that "[f]or claim determinations made in accordance with the Claim Review and Audit Program," the "*Usual, Customary and Reasonable*" fee "will be the *allowable*

10
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

*claim limits*" as defined by the "Claim Review and Audit Program" section. ECF No. 42-3 at ENV 00104. Further, according to the SPD, ELAP is only authorized by the Plan to make "claim determinations" under the "Claim Review and Audit Program. *See* ECF No. 42-2 at ENV 00056 (naming ELAP as the "Designated Decision Maker" for the "Claim Review and Audit Program"); ECF NO. 42-3 at ENV 00105 (stating that (1) "[t]he fiduciary responsibility allocated to [ELAP] is limited to discretionary authority and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the applicable *Plan* provisions under the section, 'Claim Review and Audit Program'"; and that (2) ELAP "shall have no authority, responsibility or liability other than with respect to its duties under the Claim Review and Audit Program."). Plaintiff does not argue that ELAP's interpretations and claim decisions in the instant case were made outside the context of the Plan's "Claim Review and Audit Program." As a result, according to the SPD, ELAP's reliance on the "*Allowable Claim Limits*" provision in the SPD to limit payment for Plaintiff's hospital charges to 120% of Medicare rates was wholly consistent with, and indeed required by, "the Plan's definition of Reasonable and Customary." FAC ¶ 162. Thus, under the facts alleged in Plaintiff's FAC, Plaintiff's second improper-denial theory against ELAP fails as a matter of law.

### 3. Inadequate Disclosure of "Allowable Claim Limits" Provision

Plaintiff's third improper-denial theory against ELAP is that the "*Allowable Claim Limits*" provision upon which ELAP relied to limit payments for Plaintiff's hospital charges to 120% of Medicare rates were "inadequately disclosed in the SPD." Opp. at 9. Specifically, Plaintiff alleges that the SPD's "*Allowable Claim Limits*" provisions "violate ERISA's regulations with respect to SPDs by not being properly disclosed in a way that was clear and proximate to the other coverage provisions." FAC ¶ 162. Plaintiff points to 29 U.S.C. § 1022, which requires summary plan descriptions to "be written in a manner calculated to be understood by the average plan participant," and to 29 C.F.R. § 2520.102-2, which is a regulation that enforces 29 U.S.C. § 1022. *Id.* ¶ 141. In particular, Plaintiff quotes the portion of 29 C.F.R. § 2520.102-2 stating that:

> The format of the summary plan description must not have the effect to misleading,

11
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

> misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.

29 C.F.R. § 2520.102-2(b). Plaintiff asserts that the "*Allowable Claim Limits*" provisions of the SPD were not presented in a way that complies with disclosure requirements in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-2.

The Court agrees with ELAP that the Court "does not need to reach the merits" of this argument. Reply at 6. Even assuming that the "*Allowable Claim Limits*" provisions in the SPD were inadequately disclosed in violation of 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-2, Plaintiff has failed to provide any legal basis or factual allegations to support the notion that ELAP is a proper defendant for such a violation. In particular, the regulation upon which Plaintiff relies, 29 C.F.R. § 2520.102-2, states that "[i]n fulfilling the[] requirements" related to the "[s]tyle and format of [the] summary plan description," "the *plan administrator shall* exercise considered judgment and discretion by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan." 29 C.F.R. § 2520.102-2(a) (emphasis added). Thus, § 2520.102-2(a) indicates that the duty to ensure that a plan's summary plan description complies with the disclosure requirements in § 2520.102-2(b) belongs (at least presumptively) to the plan administrator. Other regulations concerning summary plan descriptions support this notion. For example, 29 C.F.R. § 2520.104b-2, which is titled "Summary plan description," imposes on the plan administrator the duty to "furnish a copy of the summary plan description . . . to each participant covered under the plan." 29 C.F.R. § 2520.104b-2(a).

In the instant case, Plaintiff's FAC contains no factual allegations to plausibly suggest that ELAP was a de facto plan administrator for purposes of preparing or furnishing the SPD, or that ELAP was tasked with exercising—or actually exercised—"considered judgment and discretion"

12
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

with regards to the style, format, or presentation of the SPD. 29 C.F.R. § 2520.102-2(a). On the contrary, none of Plaintiff's factual allegations plausibly suggest that ELAP was involved *in any way* with the formation or preparation of the SPD.

Further, Plaintiff does not allege that ELAP was the Plan's administrator for anything but claims and appeals. Plaintiff alleges only that "ELAP acted as the Plan's claims fiduciary." FAC at 5. These allegations align with the SPD, which (1) lists Defendant Envirotech, and not ELAP, as the Plan's administrator, ECF No. 42-2 at ENV 00013; and (2) states that ELAP was merely the "Designated Decision Maker" for the "Claim Review and Audit Program," and therefore had "no authority, responsibility or liability other than with respect to its duties under the Claim Review and Audit Program." ECF No. 42-2 at ENV 00056; ECF No. 42-3 at ENV 00105.

As a result, the Court concludes that Plaintiff has failed to offer sufficient legal basis or factual allegations to plausibly suggest that ELAP had, or should be deemed to have had, a duty or responsibility to ensure that the "*Allowable Claim Limits*" provisions in the SPD were adequately presented in compliance with the disclosure requirements in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-2. Consequently, under the facts alleged, Plaintiff's third improper-denial theory against ELAP fails as a matter of law.

### 4. Conclusion

Accordingly, because all three of Plaintiff's improper-denial theories against ELAP fail as a matter of law, ELAP's motion to dismiss Plaintiff's first cause of action for improper denial of benefits in violation of 29 U.S.C. § 1132(a)(1)(B) is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a cause of action for improper denial of benefits under § 1132(a)(1)(B). *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### B. Violation of 42 U.S.C. § 300gg-6(b)

42 U.S.C. § 300gg-6(b) states that "[a] group health plan shall ensure that any annual cost-

13
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

sharing imposed under the plan does not exceed the limitations provided for under" 42 U.S.C. § 18022(c)(1). In turn, § 18022(c)(1) states in relevant part that for any given plan year, "[t]he cost-sharing incurred under a health plan . . . shall not exceed" a dollar amount calculated under 26 U.S.C. § 223(c)(2)(A)(ii) and adjusted under 42 U.S.C. § 18022(c)(4). Thus, in conjunction with 42 U.S.C. § 18022(c)(1), § 300gg-6(b) limits the total amount of cost-sharing a group health plan can impose on a policy holder in a plan year.

As discussed above, according to Plaintiff, although Plaintiff's "bill for [the] Patient's care totaled $264,026.21," the Plan paid "just $63,581.36—less than a quarter of the bill," which "left the Patient on the hook for the bill's remainder, approximately $200,444.85." FAC ¶¶ 1, 54. Plaintiff's second cause of action asserts that this "substantial underpayment" of Plaintiff's total bill for care rendered by Plaintiff to the Patient amounted to a violation of the statutory cost-sharing limitation imposed by 42 U.S.C. § 300gg-6(b). *Id.* ¶ 3. Like with Plaintiff's first cause of action, Plaintiff notes that it brings this second cause of action "pursuant to an assignment of benefits it has obtained [from] the Patient." *Id.* ¶ 169.

ELAP argues that Plaintiff's second cause of action, to the extent that it is asserted against ELAP, should be dismissed because ELAP "ha[d] no obligation or authority" to ensure compliance with the statutory cost-sharing limitation imposed by 42 U.S.C. § 300gg-6(b), and thus ELAP is not the proper defendant for a cause of action under § 300gg-6(b). Mot. at 7–8. The Court agrees with ELAP. As discussed above, the statutory cost-sharing limitation states that "[a] *group health plan shall ensure* that any annual cost-sharing imposed under the plan does not exceed the limitations provided for under" 42 U.S.C. § 18022(c)(1). 42 U.S.C. § 300gg-6(b) (emphasis added). Thus, according to the plain text of § 300gg-6(b), the duty to "ensure" that benefits under a group health plan are administered in compliance with the statutory cost-sharing limitation imposed by § 300gg-6(b) belongs to the health plan itself. As a result, the text of § 300gg-6(b) indicates that health plans are the proper defendants to sue for alleged violations of § 300gg-6(b).

In the instant case, Plaintiff does not allege that ELAP was the group plan ("the Plan")

14

Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

under which the Patient received coverage for health benefits. Instead, Plaintiff's FAC states that ELAP "acted at times as claims administrator for the Plan," "handled all appeals taken by [Plaintiff] from the Plan's initial adverse benefit decisions," and "acted in some respects in the capacity of a *de facto* Plan Administrator." FAC ¶ 9. In other words, according to Plaintiff's factual allegations, ELAP and the Plan were separate entities. Thus, Plaintiff's factual allegations do not plausibly suggest that ELAP had any obligation or duty under 42 U.S.C. § 300gg-6(b) to ensure that the amount of cost-sharing imposed on the Patient did not exceed the cost-sharing limitations referenced in § 300gg-6(b). Further, Plaintiff fails to offer any persuasive legal or factual basis for holding ELAP responsible for the alleged violation of § 300gg-6(b) despite that statute's explicit identification of *group health plans* as the entities that "shall ensure" that benefits are administered in compliance with the statutory cost-sharing limitation.

As a result, under the facts alleged, ELAP is not a proper defendant for Plaintiff's second cause of action. Accordingly, ELAP's motion to dismiss Plaintiff's second cause of action for violation of 42 U.S.C. § 300gg-6(b) is GRANTED. However, the Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a cause of action under § 300gg-6(b) against ELAP. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### C. Intentional Misrepresentation and Negligent Misrepresentation

Plaintiff's third and fourth causes of action for intentional and negligent misrepresentation are based on the two phone calls that Plaintiff made in January and March 2016 in order to verify the Patient's benefits under the Plan and to seek authorization to provide care to the Patient. Specifically, Plaintiff alleges that during those phone calls, individuals speaking on behalf of the Plan "affirmatively represented to [Plaintiff] that [the Plan] would cover" (1) certain percentages of the Patient's hospital charges up until the Patient's MOOP threshold is met; and (2) 100% of those charges after the Patient's MOOP threshold is met. FAC ¶¶ 145–46, 175, 182. However, Plaintiff alleges that at the time of those phone calls, "Defendants knew that the representations

15

were false" and "had no reasonable basis for believing that they were true," and that Defendants "intended never to pay more than" certain percentages "of a much smaller base amount, e.g., 120% of Medicare rates." *Id.* ¶¶ 176, 183. Further, Plaintiff states Defendants' failure to disclose their policy of calculating reimbursement percentages based on 120% of Medicare rates—instead of on Plaintiff's "full billed charges"—made these representations "materially misleading." *Id.* Because Plaintiff's claims for intentional and negligent misrepresentation are based on alleged misrepresentations that were made *to Plaintiff*, Plaintiff brings these claims on its own behalf and not pursuant to an assignment from the Patient. *Id.* ¶¶ 179, 186.

In its motion to dismiss, ELAP argues that Plaintiff's causes of action for intentional and negligent misrepresentation against ELAP "fail because [P]laintiff does not allege that ELAP made any of the alleged representations on which these claims are based." Mot. at 4. In its opposition, Plaintiff clarifies that it seeks to assert its intentional and negligent misrepresentation claims against the other Defendants, but not against ELAP. Opp. at 15. Thus, Plaintiff states that the FAC's assertion of these claims "against all defendants" "was an oversight." *Id.*

Accordingly, ELAP's motion to dismiss Plaintiff's third and fourth causes of action against ELAP for intentional and negligent misrepresentation is GRANTED. Because Plaintiff states in its opposition that it does not seek to assert these causes of action against ELAP, the Court dismisses these claims against ELAP without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, ELAP's motion to dismiss is GRANTED. In particular:

1. ELAP's motion to dismiss Plaintiff's first cause of action, for improper denial of benefits in violation of 29 U.S.C. § 1132(a)(1)(B), is GRANTED with leave to amend.

2. ELAP's motion to dismiss Plaintiff's second cause of action, for violation of 42 U.S.C. § 300gg-6(b), is GRANTED with leave to amend.

3. ELAP's motion to dismiss Plaintiff's third cause of action, for intentional misrepresentation, is GRANTED with prejudice.

4. ELAP's motion to dismiss Plaintiff's fourth cause of action, for negligent

16
Case No. 17-CV-03887-LHK
ORDER GRANTING ELAP'S MOTION TO DISMISS

misrepresentation, is GRANTED with prejudice.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rules of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 21, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge